JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Dayton Cote

**DEFENDANTS**
U.S. Silica Company, Norfolk Southern Corporation, Schnell Industries and FB Industries

(b) County of Residence of First Listed Plaintiff    Bradford County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Frederick County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Thomas A. Lynam, III, Esquire/Leonard G. Villari, Esquire
Villari, Lentz & Lynam, LLC, 1600 Market Street, Suite 1800
Philadelphia, PA 19103    P: (215) 568-1990

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☒ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Sections 1332 and 1367
Brief description of cause:
Personal Injuries under theories of strict product liability and negligence

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
02/26/2018
SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Dayton Cote : CIVIL ACTION
:
v. :
:
U.S. Silica Company, Norfolk Southern Corporation, : NO.
Schnell Industries and FB Industries :

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X)

| February 26, 2018 | _[signature]_ | Plaintiff, Dayton Cote |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-568-1990 | 215-568-9920 | tlynam@vll-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Dayton Cote, 8 N. 2nd Street, Towanda, PA 18848

Address of Defendant: U.S. Silica Company, 8490 Progress Drive, Sutie 300, Frederick, MD 21701; Norfolk Southern Corporation, 3 Commercial Plaza, Norfolk, VA 23510-2108; Schnell Industries, 450 Roblin Blvd. East, Winkler, MB Canada R6W OH2; and FB Industries, 555 George Avenue, Winkler, MB Canada R6W 4A6

Place of Accident, Incident or Transaction: 264 Wickwire Way, Wysox, PA 18848
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐  No☒

Does this case involve multidistrict litigation possibilities?    Yes☐  No☒

*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?    Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☒ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Thomas A. Lynam, III, Esquire, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: February 26, 2018    _____ Attorney-at-Law    83817 Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: February 26, 2018    _____ Attorney-at-Law    83817 Attorney I.D.#

CIV. 609 (5/2012)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAYTON COTE<br>8 N. 2nd Street<br>Towanda, PA 18848<br><br>                Plaintiff<br><br>    v.<br><br>U. S. SILICA COMPANY<br>8490 Progress Drive, Ste. 300<br>Frederick, MD 21701<br><br>    and<br><br>NORFOLK SOUTHERN CORPORATION<br>3 Commercial Plaza<br>Norfolk, VA 23510-2108<br><br>    and<br><br>SCHNELL INDUSTRIES<br>450 Roblin Blvd. East<br>Winkler, MB Canada R6W OH2<br><br>    and<br><br>FB INDUSTRIES<br>555 George Avenue<br>Winkler, MB Canada R6W 4A6<br><br>                Defendants | NO.<br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby files this Complaint against Defendants:

1

1. Plaintiff, Dayton Cote, is an adult individual, *sui juris*, residing at 8 N. 2nd Street, Towanda, PA 18848.

2. At all times material hereto, Plaintiff was employed by Northeast Freight Transfer, Inc.'s Shale Rail, LLC subsidiary located at 264 Wickwire Way, Wysox, PA 18848. Plaintiff's job duties included the transfer of frac sand from rail cars to tractor-trailers.

3. Defendant U.S. Silica Company (hereinafter "U.S. Silica"), is a corporation organized under the laws of Delaware with a registered corporate address at 8490 Progress Drive, Suite 300, Frederick, MD 21701.

4. At all times material hereto, U.S. Silica owned and operated a quarry located at 12942 Oriskany Road, Mapleton Depot, Pennsylvania.

5. At all times material hereto, U.S. Silica was responsible for loading operations at the Mapleton Depot facility.

6. At all times material hereto, U.S. Silica regularly engaged in business activities within the County and City of Philadelphia.

7. Defendant Norfolk Southern Corporation (hereinafter "Norfolk"), is a corporation organized under the laws of Virginia with a primary place of business located at 3 Commercial Plaza, Norfolk, VA 23510-2108.

8. At all times material hereto, Defendant Norfolk transported U.S. Silica's frac sand from the Mapleton Depot quarry to the Shale Rail transfer yard.

9. At all times material hereto, Norfolk regularly engaged in business activities within the County and City of Philadelphia.

10. Defendant Schnell Industries (hereinafter "Schnell"), is a foreign corporation organized under the laws of Canada, with a principal place of business at 450 Roblin Blvd. East, Winkler, MB Canada R6W OH2.

11. Schnell manufactures and markets and sells commercial equipment that is distributed and sold throughout the United States.

12. At all times material hereto, Schnell regularly engaged in business activities within the Commonwealth of Pennsylvania.

13. Defendant FB Industries (hereinafter "FB"), is a foreign corporation organized under the laws of Canada, with a principal place of business at 555 George Avenue, Winkler, MB Canada R6W 4A6.

14. FB markets and sells commercial equipment that is distributed and sold throughout the United States.

15. At all times material hereto, FB regularly engaged in business activities within the Commonwealth of Pennsylvania.

16. At all times material hereto, Defendants acted by and through their duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendants herein.

17. At all times material to this Complaint, Defendants acted or failed to act by their agents, servants, workmen and/or employees, who were then and there acting within the scope of their authority and course of their relationship with Defendants and in furtherance of Defendants' pecuniary interests.

18. At all times material hereto, Defendants were vicariously or otherwise liable and

responsible for the negligent, intentional, and/or willful acts or omissions of its employees, agents, ostensible agents, independent contractors, servants and/or workmen.

## JURISDICTION

19. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 as the matter in controversy exceeds the value of $75,000 and is between the citizens of different states.

20. This Honorable Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

## THE SAND

21. At all times material hereto, U.S. Silica produced and sold frac sand from its Mapleton Depot facility and other quarries.

22. Railcars are loaded with various grades of frac sand at the Mapleton Depot plant for delivery by the Norfolk Southern Corporation to various locations, including the Shale Rail transfer yard in Wysox, Pennsylvania.

23. At all times material hereto, Plaintiff's employer, Northeast Freight Transfer, was under contract with U.S. Silica to provide, inter alia, the transfer of U.S. Silica's frac sand from rail cars to tractor-trailers at the Shale Rail transfer yard in Wysox, Pennsylvania.

24. U.S. Silica's frac sand is delivered to the Shale Rail facility via rail hopper car and is transferred to tractor trailers by gravity feeding the sand through a sliding gate at the bottom of the rail hopper car. The sand pours through the open gate from the rail hopper car onto a ramped conveyor belt, called a transloader. The transloader belt then raises the sand and dumps it into a tractor trailer for delivery by road.

25. One function of the transloader is a Power Take Off (hereinafter "PTO"). The PTO is a hydraulically powered shaft on the transloader that connects to the gear on the rail cars' sliding gate assembly. A transloader PTO is used to open and close the rail car's sliding gate with a hydraulic lever, rather than cranking the gear by hand.

26. The Northeast Freight Transfer employees who transferred the sand from rail car to tractor trailer via transloader routinely encountered difficulty with a particular grade of sand, 100 Mesh, from the Mapleton Depot quarry. More specifically, the sand was prone to clumping and solidifying due to excessive moisture such that it would not properly gravity feed out of the bottom of rail cars.

27. The problem with the 100 Mesh sand from Mapleton Depot was such that entire hopper cars were sometimes unable by emptied at the Shale Rail transfer yard because the sand load had solidified and lodged in the hopper car. In such circumstances, the rail cars were set aside and sat at the Shale Rail yard.

28. It is believed, and therefore averred, that U.S. Silica was aware of the problems with their 100 Mesh sand by virtue of the loads of sand product that could not be transferred to waiting tractor trailers because it had solidified and become trapped in the rail hopper car.

29. The quality of U.S. Silica's 100 Mesh sand from Mapleton Depot was so poor that the Northeast Freight Transfer employees at the Shale Rail transfer yard would routinely be required to reach into the bottom of the rail hopper car to break up solidified sand product so that it would gravity feed through the opening at the bottom of the hopper.

### THE PRODUCT

30. At all times material hereto, Defendant, Schnell, designed, manufactured and sold commercial transloaders that they identified as model TLX36 (hereinafter "the Product").

5

31. The Product was defective in its design in that the control level for the PTO failed to have lock out/tag out provisions, as required by OSHA and applicable industry standards.

32. On or about July 25, 2014, Defendant, FB Industries, Inc., sold a Schnell Industries TLX36 transloader to Northeast Freight Transfer with the TLX36-GO Gate Opener feature. Despite the $3,600 cost of the gate opener feature, it failed to contain lock out/tag out provisions that would prevent the railcar gate from being closed on a person.

### THE ACCIDENT

33. On or about February 27, 2016, Dayton Cote and co-workers were attempting to unload a rail hopper car full of U.S. Silica's 100 Mesh sand at the Shale Rail transfer yard.

34. The sand in the hopper car was wet and had solidified into large sections such that it would not gravity feed out of the sliding gate at the bottom of the hopper.

35. As was the custom when attempting to unload the improperly loaded, wet, poor quality 100 Mesh sand from Mapleton Depot, the solidified sand required a Northeast Freight Transfer employee to reach into the bottom of the hopper, though the sliding gate, to manually free up the sand so it would flow out of the gate and onto the transloader.

36. While Mr. Cote had his hand in the hopper car in an effort to free up the sand, a co-worker used the PTO to slam the gate shut, not realizing that Mr. Cote's hand was reaching through the gate.

37. The absence of lock out/tag out provisions on the PTO lever permitted Mr. Cote's co-worker to partially sever Mr. Cote's right dominant hand at the wrist when the PTO lever was engaged.

38. Mr. Cote was then freed from the sliding gate assembly of the rail car and airlifted for emergency surgery to re-attach his hand.

## COUNT I
## PLAINTIFF v. SCHNELL AND FB
## NEGLIGENCE

39. Plaintiff hereby incorporates the averments contained in the preceding paragraphs as though same were fully set forth herein at length.

40. The negligence and/or carelessness of Defendants, acting as aforesaid, consisted of the following:

    a. Designing, manufacturing and selling a dangerous and defective machine with a poor and ineffective safety switching system;

    b. Designing, manufacturing and selling a dangerous and defective machine with no lock out/tag out provisions;

    c. Designing, manufacturing and selling a dangerous and defective machine without hydraulic locking mechanisms to prevent operation of the gate opener while an operator was near the sliding gate;

    d. Designing, manufacturing and selling a dangerous and defective machine that exposes its operators to risk of bodily harm;

    e. Failure to conduct a thorough and proper failure mode analysis;

    f. Failure to provide adequate warnings, written or otherwise;

    g. Failure to comply with OSHA regulations;

    h. Failure to include all elements necessary to make the Product safe for its intended use;

    i. Mandating a dangerous mode of operation to accommodate design deficiencies within the Product;

    j. Violating the applicable industry standards; and

    k. Negligently retaining product designers, regulatory compliance and safety personnel.

41. Said dangerous condition created a reasonably foreseeable risk of the kind of injuries which were incurred by Plaintiff.

42. The aforesaid incident was due solely as a result of the negligence and/or carelessness of Defendant, acting as aforesaid, and was due in no manner whatsoever to any act or failure to act on the part of Plaintiff.

43. As a direct and proximate result of the aforementioned incident, Plaintiff has suffered injuries which are or may be serious and permanent in nature, including but not limited to, laceration, fractured radius, fractured ulna, severed and injured tendons, the need for invasive surgery to repair said injuries, nerve injury; the loss of the use of the dominant right hand; infection; significant physical and emotional pain and suffering; loss of sleep; increased risk of medical complications; burning, numbness and tingling; damage to the nervous system; and other ailments that Plaintiff's physicians may diagnose.

44. As a further direct and proximate result of the aforementioned incident, Plaintiff has been and will be forced to receive and undergo medical attention and care and to expend various sums of money and to incur various expenses and may be required to continue to expend such sums or incur such expenses for an indefinite time in the future.

45. As a further direct and proximate result of the aforementioned incident, Plaintiff has suffered medically determinable physical and/or mental impairment which prevented Plaintiff from performing all or substantially all of the material acts and duties which constituted Plaintiff's usual and customary activities prior to the incident.

46. As a further direct and proximate result of the aforementioned incident, Plaintiff has or may hereinafter incur other financial expenses which do or may exceed amounts which

Plaintiff may otherwise be entitled to recover including, but not limited to, excess medical expenses.

47. As a further direct and proximate result of the aforementioned incident, Plaintiff has suffered severe physical pain and mental anguish and humiliation and may continue to suffer same for an indefinite time in the future.

48. As a further direct and proximate result of the aforementioned incident, Plaintiff has suffered a loss of past, present, and future earnings and earning potential.

49. As a further direct and proximate result of the aforementioned incident, Plaintiff has been and will continue to be unable to pursue his chosen avocation or to engage in gainful employment to support himself as he has done in the past.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with delay damages, interest, costs, and such other just and equitable relief as this Court deems proper.

## COUNT II
## PLAINTIFF v. SCHNELL and FB
## STRICT LIABILITY

50. Plaintiffs hereby incorporate the averments contained in all of the preceding paragraphs as though same were fully set forth herein at length.

51. Defendants, Schnell, is strictly liable in tort to Plaintiff pursuant to §402(a) of the Restatement (Second) of Torts, as adopted by the Courts of this Commonwealth as a designer, manufacturer, and seller of the defective Product.

52. Defendant, FB, is strictly liable in tort to Plaintiff pursuant to §402(a) of the Restatement (Second) of Torts, as adopted by the Courts of this Commonwealth as a seller/distributor of the defective Product.

53. The Product that injured Plaintiff was defective and dangerous.

54. The Product that injured Plaintiff reached its users without substantial change from the condition it was in when it left the control of the Defendants.

55. The Product left the control of Defendants while lacking elements necessary to make it safe for its intended use.

56. As of the date of Plaintiff's injuries, there were numerous technically and economically feasible alternative designs available to Defendants to make the product safe for its intended use.

57. The danger presented by the Product is unknowable and unacceptable to the average or ordinary consumer.

58. A reasonable person would conclude that the probability and seriousness of harm cause by the Product outweighs the burden or costs of taking precautions.

59. Pursuant to <u>Tincher v. Omega Flex, Inc.</u>, 104 A.3d 328 (Pa. 2014), Plaintiff avers that the Product is defective under the "consumer expectations test."

60. Pursuant to <u>Tincher v. Omega Flex, Inc.</u>, 104 A.3d 328 (Pa. 2014), Plaintiff avers that the Product is defective under the "risk-utility test."

61. The Product that injured Plaintiff was defective in its design in that it:

   a. Contained a poor and ineffective safety switching system;

   b. Failed to have lock out/tag put provisions for the gate opener;

    c.        Exposes its operators to risk of bodily harm;

    d.        Was not the subject of a thorough and proper failure mode analysis;

    e.        Lacks adequate warnings, written or otherwise;

    f.        Fails to comply with OSHA regulations;

    g.        Does not include all elements necessary to make the Product safe for its intended use;

    h.        Violates the applicable industry standards;

62. As a direct and proximate result of the aforementioned incident, Plaintiff has suffered injuries which are or may be serious and permanent in nature, including but not limited to, laceration, fractured radius, fractured ulna, severed and injured tendons, the need for invasive surgery to repair said injuries, nerve injury; the loss of the use of the dominant right hand; infection; significant physical and emotional pain and suffering; loss of sleep; increased risk of medical complications; burning, numbness and tingling; damage to the nervous system; and other ailments that Plaintiff's physicians may diagnose.

63. As a further direct and proximate result of the aforementioned incident, Plaintiff has been and will be forced to receive and undergo medical attention and care and to expend various sums of money and to incur various expenses and may be required to continue to expend such sums or incur such expenses for an indefinite time in the future.

64. As a further direct and proximate result of the aforementioned incident, Plaintiff has suffered medically determinable physical and/or mental impairment which prevented Plaintiff from performing all or substantially all of the material acts and duties which constituted Plaintiff's usual and customary activities prior to the incident.

65. As a further direct and proximate result of the aforementioned incident, Plaintiff has or may hereinafter incur other financial expenses which do or may exceed amounts which Plaintiff may otherwise be entitled to recover including, but not limited to, excess medical expenses.

66. As a further direct and proximate result of the aforementioned incident, Plaintiff has suffered severe physical pain and mental anguish and humiliation and may continue to suffer same for an indefinite time in the future.

67. As a further direct and proximate result of the aforementioned incident, Plaintiff has suffered a loss of past, present, and future earnings and earning potential.

68. As a further direct and proximate result of the aforementioned incident, Plaintiff has been and will continue to be unable to pursue his chosen avocation or to engage in gainful employment to support himself as he has done in the past.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with delay damages, interest, costs, and such other just and equitable relief as this Court deems proper.

## COUNT III
## PLAINTIFF v. NORFOLK
## NEGLIGENCE

69. Plaintiff hereby incorporates the averments contained in the preceding paragraphs as though same were fully set forth herein at length.

70. The negligence and/or carelessness of Defendants, acting as aforesaid, consisted of the following:

    a. Failing to monitor the loading process;

      b.      Failing to keep the loads dry during transportation;

      c.      Permitting product to be loaded that could not be reasonably expected to be safely unloaded;

      d.      Failure to report unloading issues prior to the accident;

      e.      Failure to properly supervise;

      f.      Violating the applicable industry standards; and

      g.      Negligently retaining and/or training personnel.

71. Said dangerous condition created a reasonably foreseeable risk of the kind of injuries which were incurred by Plaintiff.

72. The aforesaid incident was due solely as a result of the negligence and/or carelessness of Defendant, acting as aforesaid, and was due in no manner whatsoever to any act or failure to act on the part of Plaintiff.

73. As a direct and proximate result of the aforementioned incident, Plaintiff has suffered injuries which are or may be serious and permanent in nature, including but not limited to, laceration, fractured radius, fractured ulna, severed and injured tendons, the need for invasive surgery to repair said injuries, nerve injury; the loss of the use of the dominant right hand; infection; significant physical and emotional pain and suffering; loss of sleep; increased risk of medical complications; burning, numbness and tingling; damage to the nervous system; and other ailments that Plaintiff's physicians may diagnose.

74. As a further direct and proximate result of the aforementioned incident, Plaintiff has been and will be forced to receive and undergo medical attention and care and to expend various sums of money and to incur various expenses and may be required to continue to expend such sums or incur such expenses for an indefinite time in the future.

75. As a further direct and proximate result of the aforementioned incident, Plaintiff has suffered medically determinable physical and/or mental impairment which prevented Plaintiff from performing all or substantially all of the material acts and duties which constituted Plaintiff's usual and customary activities prior to the incident.

76. As a further direct and proximate result of the aforementioned incident, Plaintiff has or may hereinafter incur other financial expenses which do or may exceed amounts which Plaintiff may otherwise be entitled to recover including, but not limited to, excess medical expenses.

77. As a further direct and proximate result of the aforementioned incident, Plaintiff has suffered severe physical pain and mental anguish and humiliation and may continue to suffer same for an indefinite time in the future.

78. As a further direct and proximate result of the aforementioned incident, Plaintiff has suffered a loss of past, present, and future earnings and earning potential.

79. As a further direct and proximate result of the aforementioned incident, Plaintiff has been and will continue to be unable to pursue his chosen avocation or to engage in gainful employment to support himself as he has done in the past.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with delay damages, interest, costs, and such other just and equitable relief as this Court deems proper.

## COUNT IV
## PLAINTIFF v. U.S. SILICA
## NEGLIGENCE

80. Plaintiff hereby incorporates the averments contained in the preceding paragraphs as though same were fully set forth herein at length.

81. The negligence and/or carelessness of Defendant, acting as aforesaid, consisted of the following:

    a. Improperly loading moist and/or wet sand product into hopper cars;

    b. Loading sand product that could not reasonably be unloaded in a safe manner;

    c. Loading and transporting sand of deficient quality;

    d. Permitting sand product to solidify and/or clump such that it could not be unloaded via gravity feeding;

    e. Failing to act on notice that hopper cars of its 100 Mesh sand product were difficult and/or impossible to unload due to the manner in which they were loaded and/or the quality of the sand product;

    f. Failure to properly supervise the loading process;

    g. Failure to provide adequate policies and procedures to ensure that hopper cars full of its sand product could be safely unloaded;

    h. Failure to comply with OSHA regulations;

    i. Failure to include all elements necessary to make unloading the sand product safe;

    j. Violating the applicable industry standards; and

    k. Negligently retaining, regulatory compliance and safety personnel.

82. Said dangerous condition created a reasonably foreseeable risk of the kind of injuries which were incurred by Plaintiff.

83. The aforesaid incident was due solely as a result of the negligence and/or carelessness of Defendant, acting as aforesaid, and was due in no manner whatsoever to any act or failure to act on the part of Plaintiff.

84. As a direct and proximate result of the aforementioned incident, Plaintiff has suffered injuries which are or may be serious and permanent in nature, including but not limited to, laceration, fractured radius, fractured ulna, severed and injured tendons, the need for invasive surgery to repair said injuries, nerve injury; the loss of the use of the dominant right hand; infection; significant physical and emotional pain and suffering; loss of sleep; increased risk of medical complications; burning, numbness and tingling; damage to the nervous system; and other ailments that Plaintiff's physicians may diagnose.

85. As a further direct and proximate result of the aforementioned incident, Plaintiff has been and will be forced to receive and undergo medical attention and care and to expend various sums of money and to incur various expenses and may be required to continue to expend such sums or incur such expenses for an indefinite time in the future.

86. As a further direct and proximate result of the aforementioned incident, Plaintiff has suffered medically determinable physical and/or mental impairment which prevented Plaintiff from performing all or substantially all of the material acts and duties which constituted Plaintiff's usual and customary activities prior to the incident.

87. As a further direct and proximate result of the aforementioned incident, Plaintiff has or may hereinafter incur other financial expenses which do or may exceed amounts which Plaintiff may otherwise be entitled to recover including, but not limited to, excess medical expenses.

88. As a further direct and proximate result of the aforementioned incident, Plaintiff has suffered severe physical pain and mental anguish and humiliation and may continue to suffer same for an indefinite time in the future.

89. As a further direct and proximate result of the aforementioned incident, Plaintiff has suffered a loss of past, present, and future earnings and earning potential.

90. As a further direct and proximate result of the aforementioned incident, Plaintiff has been and will continue to be unable to pursue his chosen avocation or to engage in gainful employment to support himself as he has done in the past.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), together with delay damages, interest, costs, and such other just and equitable relief as this Court deems proper.

**VILLARI, LENTZ & LYNAM, LLC**

BY: _____
THOMAS A. LYNAM, III, ESQUIRE
LEONARD G. VILLARI, ESQUIRE
Attorneys for Plaintiff
Attorney ID 83817/68884
1600 Market Street, Suite 1800
Philadelphia, PA 19103
(215) 568-1990
(215) 568-1920 (fax)
tlynam@vll-law.com / lgvillari@aol.com

Dated: February 26, 2018