John T. Pion, Esquire
Attorney I.D. No. 43675
E-mail: jpion@pionlaw.com
PH: 412-667-6200

Bradley N. Sprout, Esquire
Attorney I.D. No. 203182
E-mail: bsprout@pionlaw.com
PH: 717-745-8727

**PION, NERONE, GIRMAN, WINSLOW & SMITH, P.C.**
1500 One Gateway Center
Pittsburgh, PA 15222
Phone: 412-281-2288
Fax: 412-281-3388

**Attorneys for Defendant:**
**U.S. Silica Company**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAYTON COTE,<br>        Plaintiff | : <br> : No. 2:18-cv-00835 <br> : |
| v. | : CIVIL ACTION – LAW <br> : |
| U.S. SILICA COMPANY, NORFOLK SOUTHERN CORPORATION, SCHNELL INDUSTRIES and FB INDUSTRIES,<br>        Defendants | : <br> : <br> : <br> : JURY TRIAL DEMANDED |

**U.S. SILICA COMPANY'S BRIEF IN SUPPORT OF MOTION FOR A MORE DEFINITE STATEMENT PURSUANT TO F.R.C.P. 12(e)**

Defendant, U.S. Silica Company, by and through its counsel, Pion, Nerone, Girman, Winslow & Smith, P.C., hereby submits the following Brief in Support of Motion for a More Definite Statement Pursuant to F.R.C.P. 12(e):

**I.**    **Factual & Procedural History:**

This action arises out of an incident that occurred at the Shale Rail transfer yard in Wysox, Pennsylvania. (See Complaint, ¶ 23, attached hereto as Exhibit "A"). The Plaintiff, Dayton Cote, who lives in Towanda, Pennsylvania, is an employee of Northeast Freight Transfer. (Complaint, ¶¶ 1-2). As an employee of Northeast Freight Transfer, Plaintiff was responsible for, *inter alia*, transferring frac sand from rail hopper cars that arrived at the Shale Rail transfer yard to tractor trailers. (Complaint, ¶¶ 23, 33). The frac sand was delivered to the Shale Rail transfer yard from

1

a U.S. Silica Company ("U.S. Silica") quarry in Mapleton Depot, Pennsylvania. (Complaint, ¶¶ 4, 21-22). Norfolk Southern Corporation ("Norfolk Southern") owned/operated the rail hopper cars that transported the U.S. Silica frac sand from the Mapleton Depot quarry to the Shale Rail transfer yard. (Complaint, ¶ 8).

On February 27, 2016, Plaintiff and his co-workers were attempting to unload a rail hopper car containing 100 Mesh frac sand into a tractor trailer. (Complaint, ¶ 33). In order to unload the frac sand from the rail hopper car, a gravity feeding system is used in which a sliding gate at the bottom of the rail car is opened, allowing the frac sand to pour onto a ramped conveyor belt, called a transloader, which then raises and dumps the sand into a tractor trailer. (Complaint, ¶ 24). The sliding gate on the rail hopper car is connected to the transloader through a Power Take Off, or PTO (essentially, a hydraulic shaft), which allows the rail hopper car's gate to be opened and closed through use of a hydraulic lever. (Complaint, ¶ 25). The transloader in question in this action was manufactured by Co-Defendant, Schnell Industries, and sold to Plaintiff's employer by Co-Defendant, FB Industries. (Complaint, ¶¶ 30-32).

Plaintiff alleges that the 100 Mesh frac sand was prone to clumping and solidifying, which made it difficult to unload from the rail hopper car using the gravity feed system. (Complaint, ¶ 26). On the date in question, the frac sand in the rail hopper car had solidified into large enough sections that it was not gravity feeding out of the car. (Complaint, ¶ 34). Plaintiff, in an effort to break up the sand so that it would gravity feed out of the car, reached through the rail hopper car's gate and into the bottom of the car. (Complaint, ¶ 35). As Plaintiff was reaching into the car, a coworker, not realizing Plaintiff's hand was in the car, used to PTO to shut the car's gate, partially severing Plaintiff's hand. (Complaint, ¶¶ 36-37).

On February 26, 2018, Plaintiff commenced the present lawsuit against U.S. Silica, Norfolk Southern, Schnell Industries and FB Industries. On March 5, 2018, U.S. Silica was served with Plaintiff's Complaint. As against U.S. Silica, Plaintiff has asserted a negligence claim, alleging that U.S. Silica was negligent in providing frac sand that was of a deficient quality in that it clumped/solidified during transport, improperly loading the frac sand so that it was permitted to clump/solidify during transport, and failing to take corrective actions to address the clumping/solidifying of 100 Mesh frac sand upon receiving notice of issues with unloading it. (See Complaint, ¶ 81). Among these allegations are vague and ambiguous allegations that U.S. Silica violated unspecified OSHA regulations and industry standards. (See Complaint, ¶ 81(h) & (j)).

## II. Issues Presented:

A. Whether Plaintiff's allegations in Paragraphs 81(h) and 81(j) – specifically, allegations that U.S. Silica was negligent in violating unspecified OSHA regulations and industry standards – are so vague and ambiguous that Plaintiff should be directed to re-plead the specific OSHA regulations and industry standards violated or have these allegations stricken from the Complaint?

Suggested Answer: Yes.

## III. Argument:

**A. Plaintiff should be directed to re-plead his vague and ambiguous allegations in Paragraphs 81(h) and 81(j) to specifically allege the OSHA regulations and industry standards that he believes U.S. Silica violated.**

Federal Rule of Civil Procedure 8 provides that, in order to satisfy the requisites of notice pleading, "[a] pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claims showing that the pleader is entitled to relief ...." F.R.C.P. 8(a)(2). Stated otherwise, a complaint must give the defendant fair notice of the claim and the grounds on which it rests. Pozarlik v. Camelback Associates, Inc., 2011 U.S. Dist. LEXIS 137310, *6 (M.D. Pa. 2011). While most allegations will be sufficient to overcome a claim of lack of specificity, the Federal rules are not without their limits. The factual detail in a complaint may not be so

undeveloped that it does not provide the defendant with sufficient notice of the claim as contemplated in Rule 8. Id. Thus, Rule 12(e) provides that a party may move for a more definite statement of the allegations in a pleading where the allegations are "so vague or ambiguous that the party cannot reasonably prepare a response."

For example, in Pozarlik v. Camelback Associates, Inc., 2011 U.S. Dist. LEXIS 137310 (M.D. Pa. 2011), the court considered a motion for a more definite statement as to allegations in the complaint that were similar to those that U.S. Silica is complaining about in this case. In Pozarlik, the court, in granting the defendant's motion for a more definite statement as to certain allegations of negligence, held as follows:

> Finally, the allegations of ¶ 47(b), (f)(iii), and (l) also need to be better defined. These allegations state that Queensboro was negligent in:
>
>> Failing to abide by the rules and regulations of the condominium and condominium association with respect to work at the units; failing to ensure that proper techniques were employed, and applicable safety procedures followed, as to the use of power tools and equipment at the subject property; [and] ... violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, and/or industry customs applicable to this action.
>
> Clearly, ***Queensboro cannot be asked to answer such vague and sweeping allegations, incorporating potentially innumerable state and federal laws. There is a need to identify the rules, regulations, and laws that have allegedly been violated.*** Even under the liberal pleading standard of Fed. R. Civ. P. 8(a), such claims are insufficient and need to either be further clarified or removed. The Pozarliks will need to re-tool their allegations so that Queensboro can adequately respond and prepare its defense.

Id. at *9-10 (emphasis added); see also Gregg v. Lonestar Transportation, LLC, 2015 U.S. Dist. LEXIS 27680, *12-13 (W.D. Pa. 2015) (granting a motion for a more definite statement with regard to an allegation that a defendant violated laws and regulations governing motor vehicles, "including, but not limited to" one specific regulation, because it was overly vague and left open

4

the possibility that plaintiff could pursue a claim under any number of unspecified laws and regulations).

In Paragraphs 81(h) and 81(j) of his Complaint, Plaintiff includes vague and ambiguous allegations that U.S. Silica violated unspecified OSHA regulations and industry standards, alleging the negligence of U.S. Silica consisted of:

    h.      Failure to comply with OSHA regulations; ...

    j.      Violating the applicable industry standards[.]

(Complaint, ¶¶ 81(h) & (j)). Like the allegations of violations of statutes, regulations and the like in Pozarlik and Gregg, Plaintiff's allegations in Paragraphs 81(h) and (j) fail to contain the required level of specificity. There are an extraordinary number of OSHA regulations and industry standards that may apply to the activities in which Plaintiff was engaged when he injured his hand. As they stand, Plaintiff's allegations leave U.S. Silica to guess at which OSHA regulations and industry standards that Plaintiff believes U.S. Silica violated – an almost impossible task. Moreover, as they stand, Plaintiff's allegations leave open the possibility that Plaintiff will change his theory of liability against U.S. Silica as the litigation progresses.

So that U.S. Silica can respond to Plaintiff's Complaint, and prepare its defense to Plaintiff's claims, Plaintiff should be required to plead the above-cited allegations with greater specificity, including the specific OSHA regulations and industry standards that he contends U.S. Silica violated. If Plaintiff is unable to do so, then these allegations should be stricken from the Complaint.

**IV.**    **Conclusion / Relief Sought:**

For the reasons set forth herein, Plaintiff should be required to re-plead Paragraphs 81(h) and (j) with greater specificity, including the specific OSHA regulations and industry standards

that he alleges U.S. Silica violated. If Plaintiff is unable to do so, then these paragraphs should be stricken from the Complaint.

                Respectfully Submitted,

                **PION, NERONE, GIRMAN, WINSLOW & SMITH, P.C.**

By:   _/s/_____
       John T. Pion, Esquire
       PA I.D. #43675
       Bradley N. Sprout, Esquire
       PA I.D. #203182
       1500 One Gateway Center
       Pittsburgh, PA 15222

       **Counsel for Defendant
       U.S. Silica Company**

## CERTIFICATE OF SERVICE

I, Bradley N. Sprout, of the law firm of Pion, Nerone, Girman, Winslow & Smith, P.C., counsel for the Defendant, U.S. Silica Company, hereby state that a true and correct copy of **U.S. Silica Company's Brief in Support of Motion for a More Definite Statement Pursuant to F.R.C.P. 12(e)** was served upon the following individuals/entities in the manner set forth below:

### Via the Court's ECF System

Thomas A. Lynam, III, Esquire
Leonard G. Villari, Esquire
Villari, Lentz & Lynam, LLC
1600 Market Street, Suite 1800
Philadelphia, PA 19103
**Counsel for Plaintiff**

### Via U.S. First-Class Mail

Norfolk Southern Corporation
3 Commercial Plaza
Norfolk, VA 23510

Schnell Industries
450 Roblin Blvd. East
Winkler, MB Canada R6W OH2

FB Industries
555 George Avenue
Winkler, MB Canada R6W4A6

PION, NERONE, GIRMAN,
WINSLOW & SMITH, P.C.

Date: March 23, 2018

BRADLEY N. SPROUT, ESQUIRE
Attorney I.D. No. 203182

Case 4:18-cv-01440-MWB Document 33 Filed 07/23/18 Page 8 of 13
Case 2:18-cv-00835-NIQA Document 7-5 Filed 03/23/18 Page 1 of 17
Case 2:18-cv-00835-NIQA Document 1 Filed 02/26/18 Page 4 of 20

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAYTON COTE<br>8 N. 2nd Street<br>Towanda, PA 18848<br><br>               Plaintiff<br><br>   v.<br><br>U. S. SILICA COMPANY<br>8490 Progress Drive, Ste. 300<br>Frederick, MD 21701<br><br>    and<br><br>NORFOLK SOUTHERN CORPORATION<br>3 Commercial Plaza<br>Norfolk, VA 23510-2108<br><br>    and<br><br>SCHNELL INDUSTRIES<br>450 Roblin Blvd. East<br>Winkler, MB Canada R6W OH2<br><br>    and<br><br>FB INDUSTRIES<br>555 George Avenue<br>Winkler, MB Canada R6W 4A6<br><br>               Defendants | NO.<br><br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby files this Complaint against Defendants:

1



1. Plaintiff, Dayton Cote, is an adult individual, *sui juris*, residing at 8 N. 2nd Street, Towanda, PA 18848.

2. At all times material hereto, Plaintiff was employed by Northeast Freight Transfer, Inc.'s Shale Rail, LLC subsidiary located at 264 Wickwire Way, Wysox, PA 18848. Plaintiff's job duties included the transfer of frac sand from rail cars to tractor-trailers.

3. Defendant U.S. Silica Company (hereinafter "U.S. Silica"), is a corporation organized under the laws of Delaware with a registered corporate address at 8490 Progress Drive, Suite 300, Frederick, MD 21701.

4. At all times material hereto, U.S. Silica owned and operated a quarry located at 12942 Oriskany Road, Mapleton Depot, Pennsylvania.

5. At all times material hereto, U.S. Silica was responsible for loading operations at the Mapleton Depot facility.

6. At all times material hereto, U.S. Silica regularly engaged in business activities within the County and City of Philadelphia.

7. Defendant Norfolk Southern Corporation (hereinafter "Norfolk"), is a corporation organized under the laws of Virginia with a primary place of business located at 3 Commercial Plaza, Norfolk, VA 23510-2108.

8. At all times material hereto, Defendant Norfolk transported U.S. Silica's frac sand from the Mapleton Depot quarry to the Shale Rail transfer yard.

9. At all times material hereto, Norfolk regularly engaged in business activities within the County and City of Philadelphia.

Case 4:18-cv-01440-MWB Document 33 Filed 07/23/18 Page 10 of 13
Case 2:18-cv-00835-NIQA Document 7-5 Filed 03/23/18 Page 3 of 17
Case 2:18-cv-00835-NIQA Document 1 Filed 02/26/18 Page 6 of 20

10. Defendant Schnell Industries (hereinafter "Schnell"), is a foreign corporation organized under the laws of Canada, with a principal place of business at 450 Roblin Blvd. East, Winkler, MB Canada R6W OH2.

11. Schnell manufactures and markets and sells commercial equipment that is distributed and sold throughout the United States.

12. At all times material hereto, Schnell regularly engaged in business activities within the Commonwealth of Pennsylvania.

13. Defendant FB Industries (hereinafter "FB"), is a foreign corporation organized under the laws of Canada, with a principal place of business at 555 George Avenue, Winkler, MB Canada R6W 4A6.

14. FB markets and sells commercial equipment that is distributed and sold throughout the United States.

15. At all times material hereto, FB regularly engaged in business activities within the Commonwealth of Pennsylvania.

16. At all times material hereto, Defendants acted by and through their duly authorized agents, ostensible agents, employees, workmen, and servants, all of whom were working in furtherance of the business interests of the Defendants herein.

17. At all times material to this Complaint, Defendants acted or failed to act by their agents, servants, workmen and/or employees, who were then and there acting within the scope of their authority and course of their relationship with Defendants and in furtherance of Defendants' pecuniary interests.

18. At all times material hereto, Defendants were vicariously or otherwise liable and

3

Case 4:18-cv-01440-MWB   Document 33   Filed 07/23/18   Page 11 of 13
Case 2:18-cv-00835-NIQA   Document 7-5   Filed 03/23/18   Page 4 of 17
Case 2:18-cv-00835-NIQA   Document 1   Filed 02/26/18   Page 7 of 20

responsible for the negligent, intentional, and/or willful acts or omissions of its employees, agents, ostensible agents, independent contractors, servants and/or workmen.

## JURISDICTION

19. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 as the matter in controversy exceeds the value of $75,000 and is between the citizens of different states.

20. This Honorable Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

## THE SAND

21. At all times material hereto, U.S. Silica produced and sold frac sand from its Mapleton Depot facility and other quarries.

22. Railcars are loaded with various grades of frac sand at the Mapleton Depot plant for delivery by the Norfolk Southern Corporation to various locations, including the Shale Rail transfer yard in Wysox, Pennsylvania.

23. At all times material hereto, Plaintiff's employer, Northeast Freight Transfer, was under contract with U.S. Silica to provide, inter alia, the transfer of U.S. Silica's frac sand from rail cars to tractor-trailers at the Shale Rail transfer yard in Wysox, Pennsylvania.

24. U.S. Silica's frac sand is delivered to the Shale Rail facility via rail hopper car and is transferred to tractor trailers by gravity feeding the sand through a sliding gate at the bottom of the rail hopper car. The sand pours through the open gate from the rail hopper car onto a ramped conveyor belt, called a transloader. The transloader belt then raises the sand and dumps it into a tractor trailer for delivery by road.

Case 4:18-cv-01440-MWB   Document 33   Filed 07/23/18   Page 12 of 13
Case 2:18-cv-00835-NIQA   Document 7-5   Filed 03/23/18   Page 5 of 17
Case 2:18-cv-00835-NIQA   Document 1   Filed 02/26/18   Page 8 of 20

25. One function of the transloader is a Power Take Off (hereinafter "PTO"). The PTO is a hydraulically powered shaft on the transloader that connects to the gear on the rail cars' sliding gate assembly. A transloader PTO is used to open and close the rail car's sliding gate with a hydraulic lever, rather than cranking the gear by hand.

26. The Northeast Freight Transfer employees who transferred the sand from rail car to tractor trailer via transloader routinely encountered difficulty with a particular grade of sand, 100 Mesh, from the Mapleton Depot quarry. More specifically, the sand was prone to clumping and solidifying due to excessive moisture such that it would not properly gravity feed out of the bottom of rail cars.

27. The problem with the 100 Mesh sand from Mapleton Depot was such that entire hopper cars were sometimes unable by emptied at the Shale Rail transfer yard because the sand load had solidified and lodged in the hopper car. In such circumstances, the rail cars were set aside and sat at the Shale Rail yard.

28. It is believed, and therefore averred, that U.S. Silica was aware of the problems with their 100 Mesh sand by virtue of the loads of sand product that could not be transferred to waiting tractor trailers because it had solidified and become trapped in the rail hopper car.

29. The quality of U.S. Silica's 100 Mesh sand from Mapleton Depot was so poor that the Northeast Freight Transfer employees at the Shale Rail transfer yard would routinely be required to reach into the bottom of the rail hopper car to break up solidified sand product so that it would gravity feed through the opening at the bottom of the hopper.

### THE PRODUCT

30. At all times material hereto, Defendant, Schnell, designed, manufactured and sold commercial transloaders that they identified as model TLX36 (hereinafter "the Product").

5

Case 4:18-cv-01440-MWB   Document 33   Filed 07/23/18   Page 13 of 13
Case 2:18-cv-00835-NIQA   Document 7-5   Filed 03/23/18   Page 6 of 17
Case 2:18-cv-00835-NIQA   Document 1   Filed 02/26/18   Page 9 of 20

31.     The Product was defective in its design in that the control level for the PTO failed to have lock out/tag out provisions, as required by OSHA and applicable industry standards.

32.     On or about July 25, 2014, Defendant, FB Industries, Inc., sold a Schnell Industries TLX36 transloader to Northeast Freight Transfer with the TLX36-GO Gate Opener feature. Despite the $3,600 cost of the gate opener feature, it failed to contain lock out/tag out provisions that would prevent the railcar gate from being closed on a person.

### THE ACCIDENT

33.     On or about February 27, 2016, Dayton Cote and co-workers were attempting to unload a rail hopper car full of U.S. Silica's 100 Mesh sand at the Shale Rail transfer yard.

34.     The sand in the hopper car was wet and had solidified into large sections such that it would not gravity feed out of the sliding gate at the bottom of the hopper.

35.     As was the custom when attempting to unload the improperly loaded, wet, poor quality 100 Mesh sand from Mapleton Depot, the solidified sand required a Northeast Freight Transfer employee to reach into the bottom of the hopper, though the sliding gate, to manually free up the sand so it would flow out of the gate and onto the transloader.

36.     While Mr. Cote had his hand in the hopper car in an effort to free up the sand, a co-worker used the PTO to slam the gate shut, not realizing that Mr. Cote's hand was reaching through the gate.

37.     The absence of lock out/tag out provisions on the PTO lever permitted Mr. Cote's co-worker to partially sever Mr. Cote's right dominant hand at the wrist when the PTO lever was engaged.

38.     Mr. Cote was then freed from the sliding gate assembly of the rail car and airlifted for emergency surgery to re-attach his hand.