# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAYTON COTE, | No. 4:18-CV-01440 |
| Plaintiff, | (Judge Brann) |
| v. | |
| U.S. SILICA COMPANY, NORFOLK SOUTHERN CORPORATION, SCHNELL INDUSTRIES, and FB INDUSTRIES, | |
| Defendants. | |

## MEMORANDUM OPINION

### NOVEMBER 1, 2018

## I.  BACKGROUND

On February 26, 2018, Plaintiff, Dayton Cote, (hereinafter "Cote"), filed a four-count complaint against Defendants, U.S. Silica Company (hereinafter "Silica"), Norfolk Southern Corporation (hereinafter "Norfolk Southern"), Schnell Industries (hereinafter "Schnell"), and FB Industries (hereinafter "FB"). The action was originally filed in the Eastern District of Pennsylvania and later transferred to this Court on July 23, 2018. Jurisdiction is predicated on diversity.

Two pending motions were also transferred to this Court – Defendant Schnell's Motion to Dismiss Pursuant to Rule 12(b)(2) and (6)[1] and Defendant

---

[1] ECF No. 29.

Silica's Motion for a More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e).[2] For the reasons that follow, Defendant Silica's motion will be granted, and Defendant Schnell's motion will be granted in part and denied in part; I will provide leave for the parties to engage in jurisdictional discovery; Cote will be directed to file an amended complaint.

## II.   DISCUSSION: Defendant Schnell's Motion to Dismiss

### A.   Motion to Dismiss Standard Under Federal Rule of Civil Procedure 12(b)(2)

"In reviewing a motion to dismiss under Rule 12(b)(2), [the Court] 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'"[3] "Although plaintiffs bear the ultimate burden of proving personal jurisdiction by a preponderance of the evidence, such a showing is unnecessary at the preliminary stages of litigation."[4] "Rather, [at the motion to dismiss stage] plaintiffs must merely allege sufficient facts to establish a prima facie case of jurisdiction over the person."[5]

To determine jurisdictional questions, the Court must "accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual

---

[2]   ECF No. 28.

[3]   *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (*quoting Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir.1992).

[4]   *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009) (Conner, J); *see also Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992).

[5]   *Id.*

disputes in the plaintiff's favor."[6] However, that being said, "at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction."[7] Once that defense is raised, the plaintiff must sustain its burden by establishing jurisdictional facts through sworn affidavits, testimony or other qualified evidence.[8] "A Rule 12(b)(2) motion . . . is inherently a matter that requires resolution of factual issues outside the pleadings, [in order to determine] where *in personam* jurisdiction actually lies."[9]

### B. Facts Alleged in the Complaint

The facts alleged in the complaint, which I must accept as true for the purposes of this motion, are as follows.

Dayton Cote was an employee of a non-defendant, Shale Rail, LLC, a subsidiary of Northeast Freight Transfer, Incorporated.[10] One of Cote's job duties was to transfer "frac sand" from railroad cars to tractor-trailers on arrival of the frac sand at the Shale Rail transfer yard in Wysox, Bradford County,

---

[6] *Belden Techs., Inc. v. LS Corp.*, 626 F. Supp. 2d 448, 453 (D. Del. 2009).

[7] *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990)

[8] *See Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603–04 (3d Cir. 1990); *Time Share Vacation Club*, 735 F.2d at 67 n.9.

[9] *Time Share Vacation Club*, 735 F.2d at 67 n.9.

[10] ECF No. 1 at ¶ 2.

Pennsylvania.[11] Defendant Silica produced and sold frac sand through a quarry it owned in Mapleton Depot, Pennsylvania and was responsible for "loading operations" at the quarry.[12] Defendant Norfolk Southern was the railroad company that transferred the frac sand from Silica's Mapleton Depot quarry to the Shale Rail transfer yard in Wysox.[13]

Defendant Schnell is a Canadian corporation that manufactures and sells commercial equipment, including the 'transloader' (defined below) at issue here, model TLX 36.[14] Defendant FB is, similarly, a Canadian corporation that manufactures and sells commercial equipment.[15]

"Silica's frac sand is delivered to the Shale Rail facility via rail hopper car and is transferred to tractor trailers by gravity feeding the sand through a sliding gate at the bottom of the rail hopper car."[16] "The sand pours through the open gate from the rail hopper car onto a ramped conveyor belt, called a transloader."[17] "The transloader belt then raises the sand and dumps it into a tractor trailer for delivery

---

[11] *Id.* at ¶ 2 and 8 and 22.
[12] *Id.* at ¶ 3-5.
[13] *Id.* at ¶ 8.
[14] *Id.* at ¶ 10-12 and 30.
[15] *Id.* at ¶ 13-15.
[16] *Id.* at ¶ 24.
[17] *Id.*

by road."[18]  "One function of the transloader is a Power Take-Off ("hereinafter PTO").[19]  "The PTO is a hydraulically powered shaft on the transloader that connects to the gear on the rail cars' sliding gate assembly."[20]  "A transloader PTO is used to open and close the rail car's sliding gate with a hydraulic lever, rather than cranking the gear by hand."[21]

Frac sand has various grades.[22]  "The Northeast Freight transfer employees who transferred the sand from rail car to tractor trailer via transloader routinely encountered difficulty with a particular grade of sand, 100 Mesh."[23]  "More specifically, the sand was prone to clumping and solidifying due to excess moisture such that it would not properly gravity feed out of the bottom of the rail cars."[24]  "The quality of Silica's 100 Mesh sand from Mapleton Depot was so poor that the Northeast Freight Transfer employees at the Shale Rail transfer yard would routinely be required to reach into the bottom of the rail hopper car to break up solidified sand product so that it would gravity feed through the opening at the

---

[18]  *Id.*

[19]  *Id.* at ¶ 25.

[20]  *Id.*

[21]  *Id.*

[22]  *Id.* at ¶ 22.

[23]  *Id.* at ¶ 26.

[24]  *Id.*

bottom of the hopper."[25] "The problem with the 100 Mesh sand from Mapleton Depot was such that entire hopper cars were sometimes unable to be emptied at the Shale Rail transfer yard because the sand load had solidified and lodged in the hopper car."[26] "In such circumstances, the rail cars were set aside and sat at the Shale Rail yard."[27] "It is believed, and therefore averred, that U.S. Silica was aware of the problems with their 100 Mesh sand…"[28]

On February 27, 2016, Cote and his co-workers were at the Shale Rail transfer yard unloading Silica's 100 Mesh frac sand from the Norfolk Southern "rail hopper car."[29] The sand was wet and "had solidified into such large sections such that it would not gravity feed out of the sliding gate at the bottom of the hopper."[30] "While Mr. Cote had his hand in the hopper car in an effort to free up the sand, a co-worker used the PTO to slam the gate shut, not realizing that Mr. Cote's hand was reaching through the gate."[31] "The absence of lock out/tag out provisions on the PTO lever permitted Mr. Cote's co-worker to partially sever Mr.

---

[25] *Id.* at ¶ 29.
[26] *Id.* at ¶ 27.
[27] *Id.*
[28] *Id.* at ¶ 28.
[29] *Id.* at ¶ 33.
[30] *Id.* at ¶ 34.
[31] *Id.* at ¶ 36.

Cote's right dominant hand at the wrist when the PTO lever was engaged."[32] Cote was airlifted for emergency surgery which re-attached his hand.[33]

Cote asserts that the Schnell transloader was defective, "in that the control level for the PTO failed to have lock out/tag out provisions…"[34] Specifically, Cote alleges that the Schnell transloader that injured him "failed to contain lock out /tag out provisions that would prevent the railcar gate from being closed on a person."[35]

As noted, Cote brings four counts against Defendants for their part in his injury. Count I is negligence against Schnell and FB; Count II asserts strict liability against Schnell and FB; Count III alleges negligence against Norfolk Southern; Count IV is negligence against Silica.

### C. Analysis

#### 1. Personal Jurisdiction

Rule 4(e) of the Federal Rules of Civil Procedure permits a district court to assert personal jurisdiction over nonresidents to the extent allowed under the law of the state where the court sits.[36] Pennsylvania's long-arm statute authorizes this Court to entertain jurisdiction over non-resident defendants, acting directly or by

---

[32] *Id.* at ¶ 37.

[33] *Id.* at ¶ 38.

[34] *Id.* at ¶ 31.

[35] *Id.* at ¶ 32.

[36] Fed. R. Civ. Pro. 4(e); *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984).

an agent, upon "[c]ontracting to supply services or things in this Commonwealth."[37] Jurisdiction over such a person may be exercised "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."[38] Consequently, the reach of this Court's personal jurisdiction under the Pennsylvania statute is coextensive with the due process clause of the Fourteenth Amendment to the United States Constitution.[39]

As general personal jurisdiction confers the broadest scope, the first step in the inquiry is to determine whether a defendant's contacts with the forum state are sufficient to support that jurisdiction.[40] A party subject to the general jurisdiction of a state can be called to answer any claim against him in that forum, regardless of whether the cause of action has any connection to the state.[41] In the present case, however, the parties agree that Defendant Schnell, a business incorporated in and with its principal place of business in Canada, does not maintain sufficient contacts with Pennsylvania to be subject to the general jurisdiction of the courts of the Commonwealth.[42]

---

[37] 42 Pa. C.S.A. § 5322(a)(2).

[38] 42 Pa. C.S.A. § 5322(b).

[39] See Time Share Vacation Club, 735 F.2d at 63.

[40] *Mellon Bank (East) PSFS, Nat'l Assoc. v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).

[41] *Id.*

[42] *See, e.g.* Def. Br. ECF No. 34 at 7 and Pl. Br. ECF No. 30 at 11. 0

Absent this general authority, a court may exercise jurisdiction only if specific personal jurisdiction exists.[43] This inquiry focuses on the relationship among the defendant, the forum, and the present litigation.[44] The plaintiff's claims must relate to or arise out of the defendant's contacts with the forum.[45] Such contacts must be constitutionally sufficient so as to comport with the due process clause of the Fourteenth Amendment and with "traditional notions of fair play and substantial justice."[46] Contacts that are merely "random, isolated or fortuitous" are not sufficient to confer jurisdiction.[47] "Jurisdiction is proper, however, where contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State."[48]

The United States Court of Appeals for the Third Circuit applies a three-part test to determine whether specific personal jurisdiction exists.[49] First, the defendant must have "purposefully directed its activities" at the forum state.[50] Second, the litigation must "arise out of or relate to" at least one of those

---

[43] *Mellon Bank*, 960 F.2d at 1221.

[44] *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

[45] *Mellon Bank*, 960 F.2d at 1221.

[46] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (*citing Milliken v. Meyer*, 311 U.S. 457, 463 (1941)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985); *Pinker*, 292 F.3d at 368–69.

[47] *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

[48] *Burger King*, 471 U.S. at 475 (*citing McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

[49] *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).

[50] *Id.* (*quoting Burger King*, 471 U.S. at 472).

activities.[51] Third, if the first two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comports with notions of 'fair play and substantial justice.'"[52]

As an initial matter, it is important to note that Third Circuit has recently held, in *Shuker v. Smith & Nephew, PLC*,[53] that the 'stream of commerce' theory is insufficient to establish specific personal jurisdiction over a defendant. "The stream-of-commerce theory contends, essentially, that specific personal jurisdiction exists over a non-resident defendant when that defendant has injected its goods into the forum state indirectly via the so-called stream of commerce, rendering it foreseeable that one of the defendant's goods could cause injury in the forum state."[54] "Plaintiffs must instead rely on 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"[55]

---

[51] *Id.* (*quoting Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–15 n. 9 (1984) (internal quotations omitted)).

[52] *Id.* (*quoting Burger King*, 471 U.S. at 476).

[53] 885 F.3d 760 (3d Cir. 2018).

[54] *Id.* at 780 (internal citation omitted).

[55] *Id.* quoting *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 109 (1987) (plurality opinion).

Cote's colorfully written brief[56] proposes the following as evidence that Schnell has purposefully availed itself of the privilege of conducting business within the Commonwealth:

- "Defendant's track record over the past six years proves otherwise; both its actions and explicit statements make it patently clear that it 'wanted in' on Pennsylvania's fracking boom."[57]

- "The mere fact that Defendant started producing these 'frac sandloaders' right at the onset of Pennsylvania's fracking boom *alone* gives rise to the inference of purposeful availment in Pennsylvania – the North American capital of fracking."[58]

- "But far beyond that fair and reasonable inference, we have Defendant's own words, making it clear that Defendant's transloaders were made specifically for the fracking boom, and thus Pennsylvania. Indeed, in its public social media accounts, Defendant proudly boasts of manufacturing transloaders for the purpose of '#fracking' and transporting '#fracsand'. *See* Schnell Industries Inc., August 5, 2016 & November 6, 2017 Facebook posts (accessed June 15, 2018) attached hereto collectively as Exhibit '2.' In Defendant's own words, its transloader is a '#sandloader' for '#fracking'.

---

[56] ECF No. 30.

[57] *Id.* at 5.

[58] *Id.* (emphasis in original).

*See* Exhibit '2.' Simply put, Defendant most assuredly could have anticipated being haled into court in Pennsylvania, the unrivaled hotbed of fracking."[59]

- "Perhaps most telling, *glaringly absent* from Defendant's Rule 12(b)(2) motion is an affidavit from a corporate designee, *e.g.* Brenton Dueck, attesting to a lack of sales or contacts in Pennsylvania."[60]

- "All told, by word, deed and common sense, there is ample evidence to conclude that Defendant 'wanted in' on Pennsylvania's fracking boom."[61]

Although the burden is low for Cote to demonstrate the existence of specific personal jurisdiction in this matter over Schnell, his conclusory arguments have not reached that low bar. Plaintiff has made inferential leaps, but has provided nothing concrete enough to demonstrate that Schnell purposefully directed its activities to Pennsylvania, establishes that this litigation arises out of one of those activities, or shows that the exercise of jurisdiction comports with notions of fair play and substantial justice.

Consequently, I will grant Schnell's motion only in part. It would abuse my discretion to disallow "limited jurisdictional discovery to explore" personal

---

[59] *Id.* at 6.

[60] *Id.* at 8 (emphasis in original).

[61] *Id.*

jurisdiction here.[62] I will therefore provide sixty (60) days for Cote to engage in jurisdictional discovery with Schnell. To the extent that Schnell's motion is a motion to dismiss pursuant to 12(b)(6), it is denied. The denial is without prejudice with leave for Schnell to re-raise the issues if it is determined that this Court may exercise personal jurisdiction over Schnell.

### III. DISCUSSION: Defendant Silica's Motion for a More Definite Statement

#### A. Motion for a More Definite Statement Standard

Federal Rule of Civil Procedure 12(e) permits a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." "A motion for a more definite statement is addressed to the sound discretion of the court, and will not be granted unless the defendant cannot reasonably be expected to frame a responsive pleading."[63] "In general, 'a motion for a more definitive statement is generally disfavored, and is used to provide a remedy for an unintelligible pleading rather than as a correction for a lack of detail.'"[64] "Rule 12(e) must be read in conjunction with Rule 8, which requires

---

[62] *Shuker*, at 780.

[63] *Robinson v. Penn Cent. Co.*, 336 F. Supp. 658, 659 (E.D. Pa. 1971); *see also* Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1377 (3d ed.).

[64] *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F.Supp.2d 513, 521 (E.D. Pa. 2012) *quoting Frazier v. SEPTA*, 868 F.Supp. 757, 763 (E.D.Pa.1994).

only a short and plain statement of the claim showing that the pleader is entitled to relief."[65]  "A party making a Rule 12(e) motion must 'point out the defects complained of and the details desired.'"[66] "The prevailing standard employed by Third Circuit courts is to grant a Rule 12(e) motion 'when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself].'"[67]  "The basis for granting such a motion is unintelligibility, not lack of detail."[68]

**B. Analysis**

In this matter, Defendant Silica is moving for a more definite statement, or in the alternative, to have the allegedly offending paragraphs struck.  Specifically, Silica takes issue with paragraphs 81(h) and 81(j) of the complaint.  Paragraph 81 reads, in relevant part: "the negligence and/or carelessness of Defendant, acting as aforesaid, consisted of the following:…h.  Failure to comply with OSHA regulations; …j. Violating the applicable industry standards."[69]

---

[65] *Pozarlik v. Camelback Assocs., Inc.*, No. 3:11-CV-1349, 2011 U.S. Dist. LEXIS 137310, 2011 WL 6003841, at *2 (M.D. Pa. Nov. 30, 2011)(Caputo, J.).

[66] *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 736 (D.N.J. 2008) *citing* Fed.R.Civ.P. 12(e).

[67] *MK Strategies, LLC*, at 736 *quoting Clark v. McDonald's Corp.*, 213 F.R.D. 198, 232-33 (D.NJ. 2003).

[68] *Wood & Locker, Inc. v. Doran & Assoc.*, 708 F.Supp. 684, 691 (W.D.Pa.1989).

[69] ECF No. 1 at 18.

I agree with Silica's argument that certain of the allegations of paragraph 81 are overly broad.[70] Silica is placed in the unenviable position of attempting to truthfully answer the complaint, while faced with sweeping and broad averments regarding compliance with OSHA regulations and industry standards that may be wholly unrelated to the transport and manufacture of the 100 Mesh sand (i.e., whether Silica's employees wore hardhats or safety goggles).

Accordingly, the Rule 12(e) motion will be granted. Plaintiff's amendments as to paragraphs 81(h) and (j) will be due simultaneously with its amended complaint as to Defendant Schnell.

## IV. CONCLUSION

Defendant Schnell's motion pursuant to Rule 12(b)(2) is granted. Defendant Schell's motion pursuant to Rule 12(b)(6) is denied without prejudice with leave to re-raise should jurisdiction over it exist. Defendant Silica's motion pursuant to Rule 12(e) is granted. Plaintiff will be ordered to file an amended complaint. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[70] *See e.g.*, *Pozarlik*, *supra*, and *Gregg v. LoneStar Transp., LLC,* No. CIV.A. 3:14-44, 2015 U.S. Dist. LEXIS 27680, 2015 WL 1003911, at *5 (W.D. Pa. Mar. 6, 2015).