# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAYTON COTE, | No. 4:18-CV-01440 |
| Plaintiff, | (Judge Brann) |
| v. | |
| U.S. SILICA,<br>NORFOLK SOUTHERN<br>CORPORATION,<br>SCHNELL INDUSTRIES and<br>FB INDUSTRIES, | |
| Defendants. | |

## MEMORANDUM OPINION

### JUNE 12, 2019

## I.  BACKGROUND[1]

At the times underlying the events of this case, Dayton Cote was employed by Shale Rail, LLC, a subsidiary of Northeast Freight Transfer, Inc.  His job there involved transferring frac sand from rail cars to tractor-trailers using a piece of equipment called a transloader.  Under ideal conditions, Mr. Cote would use the transloader to open a sliding gate on the bottom of a rail car, out of which sand would flow freely.  On February 27, 2016, however, Mr. Cote was working on a load of sand that had become wet and solidified in the rail car, forcing Mr. Cote to reach

---

[1]  The material in this section is derived from Mr. Cote's Amended Complaint (ECF No. 51).

through the car's open gate to break up the clumps. Unfortunately, while Mr. Cote was doing so, a coworker used the transloader to close the gate, severely injuring Mr. Cote's hand.

On February 26, 2018, Mr. Cote initiated the above-captioned action: (1) against U.S. Silica, the owner of the quarry where the sand originated; (2) against Norfolk Southern Corporation, who transferred the sand from U.S. Silica's quarry to Shale Rail's facilities; (3) against Schnell Industries, the manufacturer of the transloader; and (4) against FB Industries, Schnell's exclusive distributor in Pennsylvania, who sold the transloader to Northeast Freight. Mr. Cote's Amended Complaint contains negligence claims against all those defendants[2] and a products liability claim against Schnell and FB.[3] In response, Norfolk Southern and U.S. Silica brought crossclaims against each other, and against Schnell and FB, for contribution and indemnification.[4] Schnell now moves to dismiss Mr. Cote's claims, and Norfolk Southern's and U.S. Silica's crossclaims, against it.[5]

---

[2]  Amended Complaint ¶¶ 51-61 (Count I, a negligence claim against Schnell and FB); *id.* ¶¶ 81-91 (Count III, a negligence claim against Norfolk Southern); *id.* ¶¶ 92-102 (Count IV, a negligence claim against U.S. Silica).

[3]  Amended Complaint ¶¶ 62-80.

[4]  ECF No. 52 (Norfolk Southern's crossclaims against FB and U.S. Silica); ECF No. 76 (Norfolk Southern's crossclaim against Schnell); ECF No. 59 (U.S. Silica's crossclaims against Norfolk Southern and FB); ECF No. 82 (U.S. Silica's crossclaim against Schnell).

[5]  ECF No. 58 (Schnell's motion to dismiss Mr. Cote's claims against it); ECF No. 83 (Schnell's motion to dismiss Norfolk Southern's crossclaim against it); ECF No. 86 (Schnell's motion to dismiss U.S. Silica's crossclaim against it).

## II. DISCUSSION

### A. Whether this Court Has Personal Jurisdiction Over Schnell

Schnell argues that all claims and crossclaims against it should be dismissed for lack of personal jurisdiction, because this lawsuit does not "arise out of or relate to" an activity that it has "purposefully directed" at Pennsylvania.[6] This Court disagrees.

Schnell first argues that, because it does not sell its transloaders directly to Pennsylvanian customers, it has not "purposefully directed" its activities at Pennsylvania. However, while Schnell relies on FB to sell products in this state, Schnell "interact[s] directly with [Pennsylvanian] customers regarding warranty issues [and] part and service issues" once those products are sold, which customers

---

Schnell's pending motions to dismiss superseded crossclaims will be dismissed as moot. *See* ECF No. 64 (Schnell's motion to dismiss Norfolk Southern's original crossclaim against it, ECF No. 52, which crossclaim was superseded by an amended crossclaim, ECF No. 69); ECF No. 71 (Schnell's motion to dismiss U.S. Silica's original crossclaim against it, ECF No. 59, which crossclaim was superseded by an amended crossclaim, ECF No. 82); ECF No. 74 (Schnell's motion to dismiss Norfolk Southern's amended crossclaim, ECF No. 69, which crossclaim was superseded by a second amended crossclaim, ECF No. 76).

[6] Personal jurisdiction is either general or specific. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007). No party argues that this Court has general personal jurisdiction over Schnell, a Canadian company with a principal place of business in Canada.

Pursuant to Federal Rule of Civil Procedure 4(k), the extent of this Court's specific personal jurisdiction is governed by Pennsylvania law. Pennsylvania law, in turn, allows this Court to exercise the maximum amount of specific personal jurisdiction allowed by the Due Process Clause. *O'Connor*, 496 F.3d at 317. Therefore, this Court is allowed to exercise specific personal jurisdiction over Schnell if (1) Schnell "purposefully directed its activities" at Pennsylvania; (2) if the litigation "arises out of or relates to at least one of those" purposefully directed activities; and (3) if the exercise of personal jurisdiction over Schnell "otherwise comports with fair play and substantial justice." *Id.*

include Shale Rail and Northeast Freight, the Pennsylvania entities for which Mr.

Cote was working when he was injured.[7]   More importantly, Schnell has, for

Northeast Freight's *specific* benefit (presumably with the goal of securing a sale to

that Pennsylvanian customer through FB), taken the trouble to certify[8] that its

products qualify as "steel products" under the Commonwealth's Steel Products

Procurement Act.[9]   In other words, Schnell has done far more than "inject[] its goods

into th[is] forum . . . indirectly via the so-called stream of commerce, rendering it

foreseeable that one of [its] goods could cause injury" here; it has, instead,

"deliberate[ly] tartet[ed]" Pennsylvanian customers "as part of its efforts to sell

products . . . in Pennsylvania specifically."[10]

---

[7]   Deposition of Brenton Dueck (ECF No. 68, Ex. 4) at 15.

[8]   *See* October 20, 2015 email from Jon Doell to Paul Colarossi (ECF No. 68, Ex. 1) ("Thank you for contacting us regarding Northeast Freight Transfer and their interest in another transloader.  We took a quick inventory of the unit, and we would feel quite confident that at least 75% of the unit has been mined, processed or manufactured in the U.S.  We would just like to know what kind of information you require to prove the U.S. connection."); October 28, 2015 email from Paul Colarossi to Jon Doell (ECF No. 68, Ex. 1) ("We would need a manufacturer or fabricator to complete and sign off on Section B of the attached form.  In order for a product to be eligible, the correct answer to #14 must be 75% or higher."); ST-3 U.S. Manufacture Certification (ECF No. 68, Ex. 3) (completed form, signed by a representative of Schnell, showing 85% in response to question 14).

[9]   This law requires public agencies to use products containing a certain amount of domestic steel when completing public works projects.  *See L.B. Foster Co. v. Southeastern Pennsylvania Transp. Authority*, 705 A.2d 164, 166 (Pa. Commw. Ct. 1997) ("The [Steel Products Procurement] Act essentially requires that to qualify as [a] domestic steel product[], the product must contain at least 75% domestic steel.").

[10]   *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018).

Schnell then argues that this litigation does not "arise out of or relate to" its activities in Pennsylvania, because Mr. Cote's claims do not concern any warranty or parts service completed in Pennsylvania, or the steel-products certification completed by Schnell for Northeast Freight. Schnell, however, points to no authority—nor can this Court find any—indicating that jurisdictional analyses should describe the "purposefully directed" activity so narrowly. The proper approach, instead, seems to be to describe Schell's activity as its effort to sell, albeit through FB, its products to Pennsylvania customers. Mr. Cote's claims, about an injury allegedly caused by a Schnell product sold to a Pennsylvanian customer specifically and specially targeted by Schnell—*i.e.*, Northeast Freight—arise directly out of that activity.[11]

This Court, therefore, has specific personal jurisdiction over Schnell, and Schnell's motions will be dismissed to the extent they assert otherwise.

## B.    Whether Mr. Cote Has Stated a Negligence Claim Against Schnell

Schnell argues that Mr. Cote's negligence claim against it should be dismissed for failure to plead sufficient facts in support of it. This Court disagrees. Mr. Cote's negligence claim sounds in negligent design.[12] In support of it, he alleges that the

---

[11]    *See generally O'Connor*, 496 F.3d at 318-23 (elucidating the proper way to analyze whether a plaintiff's claim "arises out of or relates to" a defendant's contacts with the forum).

[12]    *See* Amended Complaint ¶ 52.a ("The negligence and/or carelessness of [Schnell] . . . consisted of . . . [designing], manufacturing and selling a dangerous and defective machine *with no lock out/tag out provisions*.") (emphasis added); *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 64

Schnell transloader lacked a lock out/tag out provision; that that safety feature, if present, would have prevented the rail car's gate from closing on him; and that Schnell's decision to omit that feature was negligent.[13] These allegations, at this stage, are sufficient to state a claim of negligence against Schnell.

## C. Whether Mr. Cote Has Stated a Products Liability Claim Against Schnell

Schnell argues that Mr. Cote's products liability claim against it should be dismissed for failure to plead sufficient facts in support of it. This Court disagrees. Mr. Cote's products liability claim, like his negligence claim, sounds in defective design.[14] In support of it, he alleges that "[t]he danger presented by the [transloader without the lock out/tag out provision,] [w]as unknowable and unacceptable to the average or ordinary consumer," and that "[a] reasonable person would conclude that the probability and seriousness of harm caused by the [transloader, as designed,] outweigh[ed] the burden or costs of [adding a lock out/tag out provision]."[15] These

---

(3d Cir. 2009) ("The determination of whether a product was negligently designed turns on whether an alternative, feasible, safer design would have lessened or eliminated the injury plaintiff suffered.").

[13] *See* Amended Complaint ¶¶ 43-44 ("The [transloader]. . . failed to have lock out/tag out provisions, as required by OSHA and applicable industry standards . . . [which provisions] would [have] prevent[ed] the railcar gate from being closed on a person.")

[14] *See id.* ¶ 73 ("The [transloader] that injured [Mr. Cote] was defective in its design . . . .").

[15] *Id.* ¶¶ 69-70. In other words, Mr. Cote is proceeding under both the the "consumer expectations" test and the "risk-utility" test. *See High v. Pennsy Supply, Inc.*, 154 A.3d 341, 348 (Pa. Super. Ct. 2017) ("In order to prove a product is in a 'defective condition' in the context of a design defect claim, the [Pennsylvania] Supreme Court set forth two alternative standards: (1) the consumer expectations standard (whether the danger of the product is 'unknowable and unacceptable to the average or ordinary consumer'), or (2) the risk-utility

allegations, at this stage,[16] are sufficient to state products liability claim against Schnell.

### D. Whether the Contribution Crossclaims Should Be Dismissed

Schnell also argues that the contribution crossclaims against it (brought by both Norfolk Southern and U.S. Silica) should be dismissed because the underlying claims—*i.e.*, Mr. Cote's claims against Schnell for negligence and products liability—should be dismissed. The survival of Mr. Cote's claims (see above) obviously neuters Schnell's argument vis-à-vis these crossclaims.

### E. Whether the Indemnification Crossclaims Should Be Dismissed

Finally, Schnell argues that the indemnification crossclaims against it (brought by both Norfolk Southern and U.S. Silica) should be dismissed for failure to state a claim. Specifically, Schnell notes (1) that Mr. Cote's claims against Norfolk Southern and U.S. Silica sound in negligence; (2) that, consequently, if either of those parties are eventually found liable to Mr. Cote it will be because their own conduct was negligent; and (3) that recovery under an indemnification theory

---

standard (whether 'a reasonable person would conclude that the probability and seriousness of the harm caused by the product outweighs the burden or costs of taking precautions').").

[16] *See High*, 154 A.3d at 348 ("[W]hether a product is in a defective condition is question of fact ordinarily submitted for determination to the finder of fact; the question is removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue.").

is prohibited by law where the party seeking indemnification has acted negligently. This Court agrees,[17] and will dismiss those crossclaims.

## III. CONCLUSION

For those reasons, this Court will dismiss Norfolk Southern's and U.S. Silica's indemnification crossclaims against Schnell, but will otherwise deny Schnell's pending motions to dismiss.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[17] *See Unique Technologies, Inc. v. Micro Stamping, Corp.*, No. CIV.A. 02-CV-06649, 2003 WL 21652284 (E.D. Pa. Apr. 15, 2003) ("Indemnification serves as a method for fault shifting to a third party, where the party legally obligated to pay damages caused by another is *without fault*, but for its legal status.") (emphasis added).